**IN RE: Andrea Michelle CANNON, Debtor.**

**Case No. 3:15–bk–4525–PMG**

United States Bankruptcy Court, M.D. Florida, **Jacksonville Division.**

Signed September 16, 2016

Weldon M. Burnette, Mark Burnette PA, Ocala, FL, for Debtor.

Jerrett M. McConnell, McConnell Law Group, Jacksonville, FL, for Trustee.

## ORDER ON DEBTOR'S MOTION TO AVOID LIEN OF KATHLEEN TAYLOR ON EXEMPT PROPERTY

PAUL M. GLENN, United States Bankruptcy Judge

**THIS CASE** came before the Court for a final evidentiary hearing on the Debtor's Motion to Avoid Lien of Kathleen Taylor on Exempt Property. (Doc. 10).

Under § 522(f) of the Bankruptcy Code, a debtor may avoid a judicial lien if (1) the lien had fixed on an interest of the debtor in property, and (2) the lien impaired an exemption to which the debtor would have been entitled.

On her schedules, the Debtor listed a 25% interest in certain real property located in Marion County, Florida, and claimed the property interest as exempt homestead. Kathleen Taylor is the holder of a judgment against the Debtor, and the judgment was recorded in the public records of Marion County.

The record shows: (1) that the 25% property interest is exempt in the Debtor's bankruptcy case; (2) that Taylor's lien impairs the exemption; (3) that Taylor's lien had attached while the Debtor was an owner of the property; and (4) that the lien had remained on the property until the Debtor acquired the 25% interest.

Under these circumstances, the Debtor may avoid the judicial lien under § 522(f), because Taylor's lien had fixed on an interest of the Debtor in property, and the lien impaired an exemption to which the Debtor would have been entitled.

## Background

The Debtor, Andrea Michelle Cannon, is married with one young child. She is not employed.

On January 25, 2007, the Debtor and her father acquired approximately 5.6 acres of real property located at 11660 SE 1st Street Road, Silver Springs, Florida (the Property). (Exhibit 1).

The Debtor lived in a home on the Property until the home was destroyed by a fire on June 1, 2013. (Exhibit 2).

On April 16, 2014, Kathleen Taylor (Taylor) obtained a Final Summary Judgment against the Debtor in the County Court in Marion County, Florida. (Exhibit 11). The Judgment was recorded in the public records of Marion County on April 21, 2014, and Taylor filed a Judgment Lien Certificate with the Secretary of State on April 30, 2014. (Exhibit 12).

On July 7, 2014, the Debtor signed a Warranty Deed conveying her one-half interest in the Property to her mother, Brenda Cannon. (Exhibit 13). The Warranty Deed provided that the Property was not the Debtor's homestead.

On December 14, 2014, Brenda Cannon died and devised her assets, including the one-half interest in the Property, to the Debtor and the Debtor's sister in equal shares. (Exhibit 21).

In 2015, the Debtor moved back to the Property with her husband. No dwelling is located on the site, and the couple lives in a camper owned by the Debtor's husband.

On October 14, 2015, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. On her schedules, the Debtor listed a 25% interest in the Property as an asset, and claimed the Property as exempt pursuant to article X, § 4(a)(1) of the Florida Constitution, and sections 222.01 and 222.02 of the Florida Statutes. (Docs. 1, 6).

## Discussion

■ The Debtor filed a Motion to avoid Taylor's lien on the Property pursuant to § 522(f) of the Bankruptcy Code. Section 522(f) provides:

**11 U.S.C. § 522. Exemptions**

. . .

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, . . .

11 U.S.C. § 522(f). "Under the statute, two elements must be satisfied for the debtor to avoid a judicial lien: (a) the lien must have fixed on an interest of the debtor in property; and (b) the lien must impair an exemption to which the debtor would have been entitled." In re Lezdey, 2007 WL 295213, at *5 (Bankr. M.D. Fla. 2007)(citing In re Cooper, 202 B.R. 319, 322 (Bankr. M.D. Fla. 1995), aff'd, 197 B.R. 698 (M.D. Fla. 1996)).

The two elements were separately evaluated by the United States Supreme Court in Owen v. Owen, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), and by the

Eleventh Circuit Court of Appeals in <u>Owen v. Owen</u>, 961 F.2d 170 (11th Cir. 1992).

First, the Supreme Court addressed the question of whether a judicial lien "impairs an exemption to which the debtor would have been entitled." In <u>Owen</u>, a judgment creditor asserted that its judicial lien could not be avoided under § 522(f), because the lien had attached before the property became the debtor's homestead, and pre-existing liens are excepted from Florida's homestead exemption under Florida law. <u>Owen v. Owen</u>, 500 U.S. at 307, 111 S.Ct. 1833. The Court evaluated the creditor's contention as follows:

> To determine the application of § 522(f) [bankruptcy courts] ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself.
>
> As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "*is* entitled," but one to which he "*would have been* entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" *but for what*? The answer given, with respect to the federal exemptions, has been *but for the lien at issue*, and that seems to us correct.
>
> . . .
>
> We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct. The

question then becomes whether a different interpretation should be adopted for state exemptions. We do not see how that could be possible....

> On the basis of the analysis set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal and state exemptions by § 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.

<u>Owen v. Owen</u>, 500 U.S. at 310–15, 111 S.Ct. 1833(Emphasis in original). In <u>Owen</u>, therefore, the Supreme Court acknowledged that Florida law does not permit the assertion of the homestead exemption against pre-existing liens, but ultimately concluded that the exclusion does not prevent the avoidance of the lien under § 522(f). See <u>In re Wilbur</u>, 217 B.R. 314, 317–18 (Bankr. M.D. Fla. 1998); and <u>In re Cooper</u>, 202 B.R. 319, 322–23 (Bankr. M.D. Fla. 1995). Consequently, the judicial lien in <u>Owen</u> impaired an exemption to which the debtor would have been entitled, even though it had attached before the property became the debtor's homestead.

The Supreme Court determined only the second element of § 522(f), however, and remanded the case to the Eleventh Circuit Court of Appeals to determine the first element. <u>Owen v. Owen</u>, 500 U.S. at 314, 111 S.Ct. 1833.

On remand, the Eleventh Circuit considered the issue of "whether there was a fixing of a lien on an interest of the debtor" for purposes of § 522(f). <u>Owen v. Owen</u>, 961 F.2d at 172. To avoid a judicial lien under that section, the Eleventh Circuit determined that the debtor must have had the property interest before the lien attached to the interest. <u>Id.</u> (quoting <u>Far-</u>

rey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337, 344 (1991)).

■ In other words, for there to be "a fixing of a lien *on* an interest of the debtor," as required by § 522(f), the debtor must have had the property interest prior to the fixing of the lien. Owen v. Owen, 961 F.2d at 172(Emphasis in original). If "the debtor had no property interest prior to the fixing of the lien," according to the Eleventh Circuit, "there was never a fixing of a lien *on* an interest of the debtor." Id. (Emphasis in original). Because the lien in Owen attached to the property at the same time as the debtor acquired the interest, the requirement of § 522(f) was not met, and the Court determined that the debtor could not avoid the lien. Id. at 172–73.

### A. "Impairs an exemption to which the debtor would have been entitled"

In this case, the Property at issue is approximately 5.6 acres of real property in Silver Springs, Florida. The Debtor claimed a 25% interest in the Property as exempt on her bankruptcy schedules. (Docs. 1, 6). The claim of exemption was made pursuant to article X, § 4(a)(1) of the Florida Constitution, and §§ 222.01 and 222.02 of the Florida Statutes.

#### 1. Exemptions are determined as of the petition date.

■ For purposes of § 522(f), a debtor's entitlement to a claim of exemption is determined as of the petition date. In re Harle, 422 B.R. 310, 318 n. 7 (Bankr. M.D. Fla. 2010).

> Under the Code, [ ], the question is whether the lien impairs an "exemption to which the debtor would have been entitled under subsection (b)," and under subsection (b), exempt property is determined "on the date of the filing of the petition," not when the lien fixed.

Owen v. Owen, 500 U.S. at 321, n. 6, 111 S.Ct. 1833. "The Supreme Court of the United States has instructed that the time for deciding a debtor's entitlement to an exemption for § 522(f) purposes is at the time of the filing of the petition in bankruptcy and not at the time the lien attaches." In re Allen, 217 B.R. 945, 951 (Bankr. M.D. Fla. 1998)(quoted in In re Harle, 422 B.R. at 318, n. 7). See also In re Ballato, 318 B.R. 205, 209 (Bankr. M.D. Fla. 2004)(It is "well settled that the claim of exemption is to be determined as of the petition date,").

#### 2. The Property interest is exempt.

A debtor claims exemptions in a bankruptcy case by filing a list with the Court. 11 U.S.C. § 522(*l*). Under Rule 4003(b) of the Federal Rules of Bankruptcy Procedure, a party in interest may file an objection to the list within 30 days after the § 341 meeting of creditors, or within 30 days after the list is amended, whichever is later. Fed.R.Bankr.P. 4003(b).

■ Rule 4003(b) is strictly construed, and § 522(*l*) provides that the property claimed as exempt on the list is exempt, unless a party in interest objects. The failure to file a timely, written objection to a claimed exemption is an absolute bar to consideration of the merits of the exemption. In re Man, 428 B.R. 644, 650–51 (Bankr. M.D.N.C. 2010)(citing Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) for the holding that a claimed exemption could not be challenged after the 30–day objection period, even if the debtor had no colorable basis for the exemption.).

#### a. Taylor did not file a timely, written objection to the exemption.

■ A number of courts have considered the question of whether a document

may constitute an objection to an exemption if no formal objection was filed within the 30–day period. These courts generally hold that "two key criteria" must be present for a "surrogate" document to constitute an objection: "timeliness and satisfaction of procedural concerns, which would undeniably include notice." In re Gee, 2014 WL 172334, at *3 (Bankr. N.D. Ohio 2014). Under this rule, a substitute objection "must clearly put the debtor and the debtor's counsel on notice of the objection to exemptions claimed and be filed within the deadline set forth in Rule 4003(b)." 9 Collier on Bankruptcy ¶ 4003.03[2], 4003–12 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011)(quoted in In re Gee, 2014 WL 172334, at *3.).

█ Where a debtor has filed a motion to avoid a lien on exempt property, for example, the lienholder's response to the motion should only be considered an objection to the debtor's exemption if the response was filed within the 30–day period, and "clearly questioned the validity of the Debtor's claimed Homestead Exemption" or "gave the Debtor ample notice of the grounds for their objections." In re Thompson, 2008 WL 1766592, at *6 n. 4 (Bankr. D. Mass. 2008); In re Heretakis, 293 B.R. 82, 86 (Bankr. D. Mass. 2003).

█ In this case, the Debtor claimed a 25% interest in the Property as exempt on her bankruptcy schedules. (Docs. 1, 6).

The Debtor's § 341 meeting of creditors was conducted and concluded on November 19, 2015, and the deadline to file objections to the Debtor's exemptions was December 21, 2015. (Fed.R.Bankr.P. 4003(b), 9006(a)(1)).

Taylor did not file an objection to the Debtor's claim of exemptions by December 21, 2015. In fact, Taylor did not file such an objection, even though the Debtor's Motion to Avoid Taylor's Lien on Exempt Property was filed on November 14, 2015, before the § 341 meeting, and well before the deadline. In other words, despite knowledge that the Debtor intended to use the homestead exemption, Taylor did not file a timely, formal objection to the Debtor's claimed exemption, or include such an objection in her initial response to the Motion.

Taylor filed an opposition to the Motion to Avoid Lien on November 19, 2015, but the paper contains only a one-sentence response stating that Taylor "objects to and requests a hearing on" the Debtor's Motion. (Doc. 11). The response does not provide any grounds for Taylor's opposition to the Motion. The response is insufficient to constitute an informal objection to exemptions, because it does not clearly put the Debtor on notice that Taylor objects to the Debtor's claim that the Property is exempt homestead. In re Gee, 2014 WL 172334, at *3–4 (Bankr. N.D. Ohio 2014).

Taylor also filed a Motion for 2004 Examination on December 21, 2015. (Doc. 19). In that Motion, Taylor requested discovery from the Debtor and other entities "concerning the occupancy and use" of the Property, "because the Debtor seeks to avoid a lien on such property under Section 522(f) of the Bankruptcy Code asserting that the same has been her homestead under the Florida Constitution."

In the Motion, therefore, Taylor refers to the Debtor's claimed homestead exemption. The Motion for 2004 Examination is not a sufficient objection under Rule 4003(b), however, for at least two reasons. First, the Motion only asks for discovery on the lien avoidance motion, and would not lead to a determination of the homestead exemption. In re Cherry, 341 B.R. 581, 585 (Bankr. S.D. Tex. 2006)(The policy underlying Rule 4003(b) "requires that a debtor's exemptions become final without delay."). And second, Taylor knew of the

Debtor's proposed avoidance of her lien under § 522(f) in ample time to file an objection to the claimed homestead exemption in compliance with Rule 4003(b). In re Tofani, 365 B.R. 338, 344 (Bankr. D. Mass. 2007).

Under these circumstances, the Court finds that Taylor did not file a timely, written objection to the Debtor's claimed exemptions.

The Trustee initially objected to the Debtor's exemptions, but later withdrew the Objection as part of a settlement with the Debtor. (Docs. 18, 34, 39).

Accordingly, the Debtor's 25% interest in the Property is exempt in the Debtor's bankruptcy case pursuant to § 522(l) of the Bankruptcy Code. See In re Cooper, 197 B.R. at 701–02(The holder of a judicial lien asserted that the debtor's homestead claim was unlawful under certain county ordinances, but the Court determined that the property was exempt homestead in the debtor's bankruptcy case, because no objections to the claimed exemption were filed by the bar date.).

**b. The Debtor resides on the Property with the intent to remain.**

 Additionally, the record shows that the Debtor's 25% interest in the Property was exempt homestead as of the date that the Debtor filed her bankruptcy petition, even apart from any failure to file a timely objection.

 "In Florida, homestead is established by actual occupancy of the subject property accompanied by the intent to reside in the property as one's homestead." In re Callejo, 2015 WL 779002, at *2 (Bankr. S.D. Fla. 2015). Under Florida law, the character of a property as homestead "depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." In re Harle, 422 B.R. 310, 314 (Bankr. M.D. Fla. 2010)(quoting Hillsborough Investment Co. v. Wilcox, 152 Fla. 889, 13 So.2d 448, 452 (1943)).

In this case, the operative date to determine the homestead character of the Property is October 14, 2015, the date that the Debtor filed her bankruptcy petition. On that date, the Debtor resided on the Property with the intent to remain there as her permanent residence.

The Debtor testified that she initially purchased the Property with her father in 2007, and that she lived on the Property until she was displaced by a fire in June of 2013. (Exhibits 1, 2). The mortgage on the Property was paid from insurance proceeds following the fire. (Exhibit 44).

On July 7, 2014, the Debtor signed a Warranty Deed conveying her one-half interest in the Property to her mother. (Exhibit 13). On December 14, 2014, the Debtor's mother died and devised her assets, including the one-half interest in the Property, to the Debtor and the Debtor's sister in equal shares. (Exhibits 21). Accordingly, the Debtor received one-half of her former one-half interest in the Property after her mother's death, and it is this 25% interest in the Property that the Debtor owned on the petition date.

The Debtor testified that she married her husband in November of 2014, and that she returned to live on the Property with her husband in mid-2015, prior to the filing of her bankruptcy petition. The Debtor's testimony was corroborated by her father, who also testified that the Debtor had resided on the Property since early to mid-2015.

The couple and their infant child live in a camper that belongs to the Debtor's husband. Taylor contends that the Debtor's habitation in the camper on the Property is a violation of certain provisions of the Marion County Land Development

Code (Exhibits 29, 30), and that the Debtor therefore cannot formulate a lawful intent to reside permanently on the Property.

Significantly, however, the Debtor testified that the Property is her only permanent home, that she and her family have no other residence, and that she intends to place a mobile home on the property and reside there permanently. The Debtor further testified that she has selected a mobile home, and that she has taken steps to obtain the required permits to place the mobile home on the Property. Grisolia v. Pfeffer, 77 So.3d 732, 734 (Fla. 3d DCA 2011)(For a homestead exemption, it is sufficient that the owner intended to make the property his family's permanent residence, and that the owner's family reside on the property.). It appears undisputed that the Debtor actually resided on the Property, and that she had no other home or plans for another home, as of the petition date.

Under these circumstances, the Court finds that the Debtor lived on the Property, and intended to reside there permanently, as of October 14, 2015. Accordingly, the 25% interest in the Property is exempt homestead in the Debtor's bankruptcy case.

### 3. Taylor's lien impairs the exemption.

■ The Debtor's 25% interest in the Property is exempt in the Debtor's bankruptcy case. The Debtor acquired the 25% interest by inheritance after her mother died in December of 2014. Taylor's judgment against the Debtor was recorded in April of 2014, before the Debtor received the inheritance. (Exhibits 11, 12).

Taylor asserts that a "debtor may not avoid a judicial lien under Code Section 522(f) that attaches to the real property prior to the debtor acquiring the interest in the property that she seeks to exempt." (Doc. 47, p. 10). Because the judgment was recorded before the Debtor claimed the Property interest as homestead, Taylor contends that the judicial lien is a pre-existing lien that is excepted from the homestead exemption and that may not be avoided under § 522(f).

The Supreme Court resolved this issue in Owen. Under Owen, a pre-existing lien may be avoided under § 522(f), even though Florida law excludes such liens from the homestead exemption. Owen v. Owen, 500 U.S. at 310–15, 111 S.Ct. 1833. See In re Wilbur, 217 B.R. at 318(The Supreme Court held in Owen that "Florida's exclusion of pre-existing liens from the homestead exemption does not exclude those same liens from the lien avoidance statute."). According to the Supreme Court, the correct application of § 522(f) is to determine whether the avoidance of a judicial lien would entitle the debtor to an exemption, "and if it would, then avoid and recover the lien." Owen v. Owen, 500 U.S. at 312–13, 111 S.Ct. 1833.

In this case, the Debtor is entitled to a homestead exemption for her 25% interest in the Property, and the full value of the exemption would be allowed in her bankruptcy case "but for" Taylor's lien itself. Id. at 310–11, 111 S.Ct. 1833. Consequently, Taylor's judicial lien may be avoided under § 522(f), because it will impair the exemption to which the Debtor is entitled.

### B. The "fixing of a lien on an interest of the debtor in property"

For a debtor to avoid a judicial lien under § 522(f), the other element that must be satisfied is that "the lien must have fixed on an interest of the debtor in property." In re Lezdey, 2007 WL 295213, at *5.

### 1. The lien attached to the Property while the Debtor was an owner.

■ The creation of a judicial lien in Florida is governed by § 55.10 of the Florida Statutes. That section provides in part:

**55.10. Judgments, orders, and decrees; lien of all, generally; extension of liens; transfer of liens to other security**

(1) A judgment, order, or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation, . . .

Fla. Stat. § 55.10(1). Under this statute, "[a] judgment lien on real property is a general lien extending to all property in existence at the time the lien is created and all property acquired by the judgment debtor during the life of the judgment." In re Barber, 2006 WL 2398775, at *7 (Bankr. M.D. Fla. 2006)(citing Owen v. Owen, 961 F.2d at 172, and Allison on the Ocean, Inc. v. Paul's Carpet, 479 So.2d 188–190–91 (Fla. 3d DCA 1985)).

In this case, Taylor's judgment was recorded in the public records of Marion County, Florida in April of 2014, and the Debtor has not disputed Taylor's compliance with § 55.10 of the Florida Statutes. (Exhibits 11, 12). The Debtor was the owner of a one-half interest in the Property at the time that the judgment was recorded, and Taylor's judicial lien therefore attached to the Property under § 55.10

**2. The lien remained on the Property until the Debtor acquired the 25% interest.**

 For a debtor to avoid a judicial lien under § 522(f), the lien "must have fixed on an interest of the debtor in property." 11 U.S.C. § 522(f).

In Owen, the Eleventh Circuit Court of Appeals determined that the "fixing of a lien" element of § 522(f) means that the debtor must have had the property interest prior to the fixing of the lien. Owen v. Owen, 961 F.2d at 172. The basis for this determination stems from the nature of a judicial lien as a "general lien" that attaches to after-acquired property:

Under Florida law, the creditor's recorded judgment became a lien upon the real property thereafter acquired by the judgment debtor at the same time that title was acquired. . . . "A judgment lien is a general lien which attaches to any property currently owned by the judgment debtor. It springs to life the minute the debtor acquires property to which it attaches." Allison on the Ocean, Inc. v. Paul's Carpet, 479 So.2d 188, 190–91 (Fla. Dist.Ct.App. 1985).

Owen v. Owen, 961 F.2d at 172. In Owen, for example, the judgment had been recorded in 1976, and the property was acquired in 1984, so that the lien sprang to life and "fixed simultaneously" with the acquisition of the property. According to the Eleventh Circuit, therefore, "there was never a fixing of a lien *on* an interest of the debtor, as the debtor had no property interest prior to the fixing of the lien." Owen v. Owen, 961 F.2d at 172(Emphasis in original). Rather, the Eleventh Circuit quoted the Supreme Court's decision in Farrey v. Sanderfoot for the holding that a debtor cannot avoid the fixing of a lien under § 522(f), "unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest." Owen v. Owen, 961 F.2d at 172(quoting Farrey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 1829, 114 L.Ed.2d. 337, 344 (1991))(Emphasis in original).

In this case, Taylor's judgment was recorded in April of 2014, and the Debtor acquired her 25% interest in the Property after her mother died in December of 2014. Based on this sequence of events, therefore, it may be asserted that the 25% interest is a newly-acquired property interest, and that Taylor's judicial lien "fixed simultaneously" with the Debtor's acquisi-

tion of the new interest. Consequently, under the normal operation of the rule in <u>Owen</u> and <u>Farrey</u>, the Debtor would be unable to avoid the lien on the 25% interest under § 522(f), because Taylor's lien never fixed "on an interest of the debtor in property."

The circumstances of this case differ significantly from the circumstances in <u>Owen</u>, however, because Taylor's judgment became a lien on the Property when it was recorded in April of 2014, at a time when the Debtor owned a one-half interest in the same Property. Specifically, the Debtor and her father purchased the Property in 2007, and the Debtor continuously owned a one-half interest in the Property from 2007 until July 7, 2014, when she conveyed her one-half interest to her mother. (Exhibits 1, 13). When Taylor's judgment was recorded in April of 2014, therefore, it became a lien on the Property under § 55.10 of the Florida Statutes.

■ Taylor's judicial lien has remained as a valid lien on the Property from the date that the judgment was recorded through the Debtor's inheritance of the 25% interest in the same Property from her mother.

> A valid money judgment which has been duly recorded and entered as a lien against land "must be accorded its legal effect until it is satisfied by payment (see § 55.141, Fla. Stat.) or the lien thereof expires as provided by law (see §§ 55.081 and 55.10, Fla. Stat.) or judicial relief from judgment is properly granted party or his legal representative for a reason recognized in law (see Fla. R.Civ.P. 1.540)."

<u>Lamchick, Glucksman & Johnston, P.A. v. City National Bank of Florida</u>, 659 So.2d 1118, 1119 (Fla. 3d DCA 1995)(quoting <u>Sharpe v. Calabrese</u>, 528 So.2d 947, 950 (Fla. 5th DCA 1988)). A judicial lien retains its legal effect on a property until it is satisfied or expires, even if the property is subsequently transferred to a third party. <u>Sharpe v. Calabrese</u>, 528 So.2d at 950.

The judicial lien in this case is unlike the lien in <u>Owen</u>, therefore, because it did not "spring to life" when the Debtor acquired the 25% interest in the Property after her mother's death. Rather, the lien had remained a valid lien on the Property since April of 2014, when the recordation of Taylor's judgment created a lien against Property in which the Debtor had an interest. See <u>In re Cooper</u>, 202 B.R. 319, 325 (Bankr. M.D. Fla. 1995), <i>aff'd</i>, 197 B.R. 698 (M.D. Fla. 1996)(The "lien fixed on an interest of the Debtor in property, since the Debtor purchased the property prior to the time that [the creditor] recorded its judgment.").

Under the circumstances of this case, the Court finds that Taylor's lien had fixed on an interest of the Debtor in property, because the Debtor had an interest in the Property when the lien attached in 2014, and the lien remained a valid lien on the Property when the Debtor subsequently acquired her 25% interest in the Property.

**Conclusion**

The Debtor filed a Motion to Avoid Lien of Kathleen Taylor on Exempt Property.

Under § 522(f) of the Bankruptcy Code, a debtor may avoid a judicial lien if (1) the lien had fixed on an interest of the debtor in property, and (2) the lien impaired an exemption to which the debtor would have been entitled.

On her schedules, the Debtor listed a 25% interest in certain real property located in Marion County, Florida, and claimed the property interest as exempt homestead. Kathleen Taylor is the holder of a judgment against the Debtor, and the judgment was recorded in the public records of Marion County.

The record shows: (1) that the 25% property interest is exempt in the Debtor's bankruptcy case; (2) that Taylor's lien impairs the exemption; (3) that Taylor's lien had attached to the Property while the Debtor was an owner; and (4) that the lien had remained on the Property until the Debtor acquired the 25% interest.

Under these circumstances, the Debtor may avoid the judicial lien under § 522(f), because Taylor's lien had fixed on an interest of the Debtor in property, and the lien impaired an exemption to which the Debtor would have been entitled.

Accordingly:

**IT IS ORDERED** that:

1. The Motion of the Debtor, Andrea Michelle Cannon, to Avoid Judicial Lien of Kathleen Taylor on Exempt Property is granted as set forth in this Order.

2. The judicial lien of Kathleen Taylor, as evidenced by the recorded Final Summary Judgment dated April 16, 2014, in the case styled <u>Kathleen Taylor v. Andrea Cannon</u>, Case No. 2013–CC–670, County Court of Marion County, Florida, is avoided pursuant to § 522(f) of the Bankruptcy Code as to the Debtor's 25% interest in the real property located at 11660 SE 1st Street Road, Silver Springs, Florida.